The Case Goddin the Pits. Father having a small Estate in the Year 1710. died Intestate His Wife obtains L’res of Adm’on, and in October 1710, Exhibits an Inventory of the Estate which consisted of Cattle and Household Goods Appraised to 38.10.9. & 3 Negroes, a Man Appraised at 2T>£. a Woman Appraised at 2b£. and a Child at 5£. In all 55^. So the whole amount of the Inventory was 93. 10- 9.
Goddin the Intestate in his Lifetime was Indebted to [189] Keiling £.7. 1. 3. Stg. Stannup marries Goddins Widow and Keiling June 14. 1711. obtains a Judgm’t against them for his Debt & Costs. 10th June an Ex’on issued and by Virtue thereof that Negro Woman and her Child Appraised at 30;£. were taken to Satisfy the Judgment, Stannup then pays the Money and takes the two Negroes again thinking the Property by these methods was legally vested in him
In January 1715. he Exhibits an Acco’t of the Intestates Estate wherein he Charges for Debts paid 27. 18. 11¿, and 5 pr Ct. for his own Trouble 1. 8. O. and giving Credit for the amount of the Inventory makes a Ball, of 64. 3. 9J. due to be divided between the Widow and the Pit. which is 9£. and upwards more than the value of the 3 Negroes
*R81 Stannup disposes of the Negro Woman and her Children as his own, and dies, leaving his Wife his Ex’r She afterwards married the Deft. Morris. The Negro Woman has now seven Children, She & the Children are in the Possession of the Deft. Morris, and the others are in the Possession of the Deft. Allen being given to him as a Portion with Stannups Daughter
All this matter appears by the Bill and the Answers of the Several Defend’ts And the End of the Bill is, that the Pit. who is the Son and Heir of Goddin the Intestate may be relieved ag’t the Defts. Morris & Allen to recover the Negroes in their possession
The Bill Charges a Combination and contrivance between Stan’p and Keiling to Serve the Execution upon these two Negroes in Order to Vest the property of them in Stannup, But Keiling in his Answer denys it, So we have nothing to say ag’t him, It is certainly Lawful for a Creditor to Sue for his Debt and to serve an Execon. upon what part of his Deb’rs Estate he pleases
But I think this Scheme of Stannups to vest the property of these Negroes in himself is a very vain and fruitless one and not to be supported either by the Rules of Law or Equity
And the short Question upon the matter is Whether when a Man dies and leaves a Personal Estate sufficient to pay all his Debts with an Overplus and Several Negroes, And a Cred’r having a Judgment Serves an Execon. upon one or more of the Negroes, and the Ex’or redeems those Negroes by paying a Sum of money which is less than the value of one of the Negroes, the property shall be vested in him or remain in the Heir as it was before
Now in the Determining this Question it must be observed [190] If the Sum paid for the Redemption of the Negro in such a Case be less than the value there can be no difference between pay’g a Shilling or 10;£. Equity must make the same Judgmt. in both Cases Then observe the Inconveniences of Establishing such a Practice among Exors.
A Man may die indebted to several Persons Several small Sums and tho’ he leaves sufficient Personal Estate to pay them, his Ex’ors may oblige these Cred’rs to sue for their Debts Then they shall have a Judgm’t, An Ex’on follows every Judgm’t. They are served upon several Negroes Then the Ex’ors will pay the Money and the Negroes become his own.
*R82 If this may be done, the Policy of the Law of this Country in preserving Slaves for the Benefit of Heirs will be in a great measure frustrated, And a Door will be opened to great fraud, and Orphans Exposed to the Cunning and Contrivance of Exors. & Adm’rs
But I conceive this cannot be, but the property of these Negroes will still remain in the Heir, notwithstanding such a Contrivance And when Mr. Stannup in this Case redeemed the two Negroes which were Appraised at 30;£. by the paym’t .of 7£. which was not a fourth part of the value, he did nothing but his Duty and he had Sufficient of the Personal Estate in his Hands to -reimburse the Money, and he must take it out of that and not charge the Negroes
Personal Estate is in its own nature liable in the first place for the payment of Debts and when the real Estate is charged with Debts and is applied according If there be any Personal Estate the Heir shall be reimbursed out of it, this is an Established Rule in the Court of Chancery So are many Preced’ts Armitage & Metcalf 1. Cha. Ca. 74. Cornish & Mew ib. 271. L’d Gray & Lady Gray 2. Cha. Cases 297. Ib. 5. Popley & Popley ib’d 84. 1. Vern. 36. White & White 2. Vern. 43. Lovel & Lancaster ib’d 183. Cutler & Coxeter ib’d 302.
In this Court it hath been several times Adjudged that if an Exor having sufficient Personal Estate in his Hands sell Neg’es for the paym’t of Debts, such Sale is void, and the Heir may recover the Negroes. It was so in Drummond’s Case
The late Law for Explaining the Act making Negroes Real Estate Ratifys those Judgm’t, and expressly declares that Ex’ors shall not Sell Negroes till the Personal Estate is exhausted Then according to the Cases in the Court of Chancery it is very Clear that the Heir at least must [191] be reimbursed out of the Personal Estate when his Negroes are Legally taken to paym’t of Debts, and bona fide Sold This would be no Question
And by the Judgm’ts and the Law here, where Negroes are Sold for the payment of Debts by an Ex’or who has sufficient Assets besides, no prop’ty passes from the Heir, but he may recover them wherever he finds ’em
But here the Execution will be objected, and it may be say’d that the property of the two Negroes in this Case was Transferred to the Cred’rs and passed again from him to Stannup upon payment of the Money
*R83 Now as to the Execution, in such Cases as these it must be Generally Admitted, that when the Negroes of a Dead Man are taken and Sold to satisfy a Judgment such a Sale must be good, altho’ there be other Assets; And the Heir must in that Case resort to the Personal Estate for Satisfaction. Otherwise the buying of Negroes at such Sales and buyers might be too much discouraged; Yet I think anEx’orwou’d be to blame to force the Cred’rs to that Extremity when he might raise Money out of the Personal Estate to save the Negroes, and it is certainly the Duty of Exors. to dispose of the p’rsonal Estates in the first place and apply it to the paym’t of Debts so far as it will go
But that is not the present Case, Here was no property altered by this Ex’on, for as the Law was then the property vested in the Cred’rs after Appraism’t and paying the Overplus, It appears that nothing of this was done but the Negroes were delivered up back to Mr. Stannup upon his Satisfying the Judgment And if no property vested in Keiling none can be Claimed under him, then the Circumstance of the Exon makes no difference and nothing will remain to transfer the property to Stannup but paying the Money which can avail Nothing, But that is not the Present Case If the property had passed when it returned again to the Exor. for so Stannup is to be considered in this Case, he had it in the same right he had before, Pie was as a Trustee for the Pit. who was an Infant, He was bound in Conscience to Act for his Benefit and not for his own, And so his Act of redeeming the Negroes must have been Construed if he had done nothing to shew a Contrary Intent
Pie paid 7£. for what was worth 30^. and it was no Disadvantage to him having enough to make him Satisfaction if that gave him a right to the Negroes The Heir has lost 6 Negroes and he has gained so much very good Interest if he had paid the 7£. out [192] of his own Pocket, but no Court of Equity will give a Sanction to such a Practice So it is Submitted
And the Court Decreed Accordingly, That Stannup had gained no property in the Negroes, but the same, notwithstanding the payment of the Money remained in the Pit. And therefore Decreed that the Defts. shou’d deliver to him the several Negroes in their possession